UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RASAUN BLACKMON,

                                        Plaintiff,                          **Hon. Hugh B. Scott**

                        v.                                                  **18CV650V**

                                                                            **Report
                                                                            &
                                                                            Recommendation**

CHRISTOPHER McKIMMIE and
SAMUEL CALE,

                                        Defendants.

_____

        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 21, Sept. 9, 2019).  The instant matter before the Court is a motion of defendants

(Docket No. 13) to dismiss.  This motion was fully briefed before referral to the undersigned (see

Docket Nos. 19 (plaintiff's responding Memorandum), 20 (defense reply), 21 (referral Order);

see also Docket Nos. 14, 16, 18, briefing Orders, 15, 17 (stipulation and letter motion seeking

extension of briefing deadlines)).  The motion is deemed submitted, without oral argument, as of

September 10, 2019.  No Scheduling Conference has been held or Scheduling Order has been

issued yet in this case.

## BACKGROUND

        This is a civil rights action, alleging excessive force, malicious prosecution, and false

imprisonment by two Niagara Falls, New York, police officers, defendants McKimmie and Cale

(Docket No. 1, Compl.).  On February 21, 2017, defendants McKimmie and Cale were

conducting an unrelated traffic stop when plaintiff drove by them before stopping at his home (id. ¶¶ 1, 13-15).  McKimmie approached plaintiff but plaintiff claims that he was unaware that he was under arrest (id. ¶¶ 1, 15-19).  Seeing McKimmie move to his belt, fearing for his safety, and wishing to avoid being shot with a taser, plaintiff ran from the officers (id. ¶¶ 20-21).  McKimmie fired the taser (id. ¶ 23) and defendant Cale pounced on plaintiff and pinned plaintiff down to the ground to arrest him (id. ¶ 24).  McKimmie tasered plaintiff again (id. ¶ 25).  Plaintiff claims he was permanently disfigured with scars on his arm and body from the tasering (id. ¶ 26, see id., ¶ 35 Ex. C).  Plaintiff also attached a video taken of what he termed "the aftermath" of the encounter that he claims shows that no statement was made that he was under arrest (id., Compl. ¶¶ 27, 28-29, Ex. A; see also id., Ex. D, Tr. at 33).  According to the questioning during the subsequent probable cause hearing, the video in Exhibit A depicted a minute after plaintiff was tasered (id., Ex. D, Tr. at 23 (McKimmie)) and McKimmie testified that the video was taken after the chase and tasering of plaintiff, about a minute and a half after plaintiff began running (id., Tr. at 33).

Plaintiff was charged with resisting arrest, obstruction of governmental administration (or abbreviated as "OGA"), and traffic violations (id. ¶ 31, Ex. E).  These charges were dismissed after a probable cause hearing (id. ¶ 32, Ex. B, probable cause decision).  Incorporated in the Complaint, are the probable cause hearing transcript of February 21, 2017 (id. Ex. D), and the transcript of City Court Judge Robert Merino's decision (id. Ex. B), see Fed. R. Civ. P. 10(c).

*Defendants' Motion to Dismiss, No. 13*

In support of their motion to dismiss, defendants cite to the included transcripts from proceedings in plaintiff's criminal prosecution in Niagara Falls City Court (Docket No. 1,

Compl. Exs. D, B).  Defendants point to plaintiff driving by defendants during an unrelated

traffic stop.  Instead of bearing away or slowing down from this traffic stop, plaintiff allegedly

nearly struck McKimmie while he was engaged in that stop (Docket No 1, Compl. ¶¶ 13-15,

Ex. D, Tr. at 5, 7, 16, 36, 48; Docket No 13, Defs. Memo. at 2).  After plaintiff parked his car,

McKimmie went to talk with plaintiff (Docket No. 1, Ex. D, Tr. at 41, 48; Docket No. 13, Defs.

Memo. at 2).  As McKimmie approached, plaintiff exited his vehicle (Docket No. 1, Ex. D, Tr. at

8; Docket No. 13, Defs. Memo. at 2).  McKimmie began to speak to plaintiff about his speed and

failure to move over from the traffic stop and an argument ensued (Docket No. 1, Ex. D, Tr. at 8,

42; Docket No. 13, Defs. Memo. at 2-3).  McKimmie said he told plaintiff that plaintiff was

detained for traffic infractions (Docket No. 1, Ex. D, Tr. at 9, 10, 43; Docket No. 13, Defs.

Memo. at 3).  As McKimmie reached for his belt (or, as alleged in the Complaint, for his taser),

plaintiff began to run (Docket No. 1, Ex. D, Tr. at 10, 44, 73; Docket No. 13, Defs. Memo. at 3).

Both officers chased plaintiff claiming that they called for plaintiff to stop and said he was under

arrest (Docket No. 1, Ex. D, Tr. at 10, 50; Docket No. 13, Defs. Memo. at 3).  Plaintiff tripped

and fell (Docket No. 1, Ex. D, Tr. at 10, 50; Docket No. 13, Defs. Memo. at 3).  McKimmie then

deployed his taser, missing plaintiff but hitting Cale (Docket No. 1, Ex. D, Tr. at 27, 28; Docket

No. 13, Defs. Memo. at 3).  McKimmie then fired the taser again two times striking plaintiff as

he fought with Cale (Docket No. 1, Ex. D, Tr. at 27, 30 (testimony of McKimmie), 50 (Cale), 10

(McKimmie), 30, 51; Docket No. 13, Defs. Memo. at 3).

Plaintiff was charged with three misdemeanors and three traffic infractions (Docket

No. 1, Compl., Ex. E; Docket No. 13, Defs. Memo. at 3-4; Docket No. 13, Defs. Atty. Decl.

Ex. 1), including resisting arrest and OGA (Docket No 1, Compl. ¶ 31, Ex. E).  On July 6, 2017,

a probable cause hearing was held (Docket No. 1, Ex. D; Docket No. 13, Defs. Memo. at 4).  On

September 26, 2017, Judge Merino ruled that there was probable cause for the charged traffic

infractions and for misdemeanor reckless driving (Docket No. 1, Ex. B, Tr. at 2, 3; Docket

No. 13, Defs. Memo. at 4-5).  Judge Merino, however, dismissed the OGA and resisting arrest

misdemeanor charges because he found that there was no criminal activity occurring (Docket

No. 1, Ex. B, Tr. at 2-3; Docket No. 13, Defs. Memo. at 4).  Plaintiff then pled guilty to a failure

to move over traffic infraction (Docket No. 13, Defs. Atty. Decl. Ex. 1; Docket No. 13, Defs.

Memo. at 5).  The remaining misdemeanor and traffic infractions were dismissed (Docket

No. 13, Defs. Atty. Decl. Ex. 1; Docket No. 13, Defs. Memo. at 5).

Defendants now move to dismiss the Complaint (Docket No. 13).  They argue that

plaintiff's guilty plea established that defendants could detain or arrest him (Docket No. 13,

Defs. Memo. at 7-8).  Further, plaintiff's guilty plea to traffic infraction for failure to move over

estops him from denying that he had committed traffic infractions (id. at 8-9).  Defendants argue

that Judge Merino's probable cause findings are immaterial and has no estoppel effect because

defendants were not parties to plaintiff's criminal prosecution and thus could not litigate the

issue (id. at 9, 11), see Jenkins v. City of N.Y., 478 F.3d 76, 85-86 (2d Cir. 2007).  Defendants

also invoke qualified immunity to render Judge Merino's decision immaterial (id. at 10).

As for plaintiff's false arrest claim, defendants argue that it also should be dismissed

because probable cause existed for any offense, therefore no false arrest occurred (id. at 11-12).

Defendants characterize plaintiff's excessive force claim as "a disguised false-arrest claim" (id.

at 13) and, as such, also is foreclosed by plaintiff's guilty plea (id.).  Furthermore, defendants

point out that the Complaint does not allege what lesser level of force should have been applied

here, short of not attempting to detain plaintiff at all (id. at 13-15).  The element of malice necessary for the related malicious prosecution claim is contradicted in the Complaint and the exhibits incorporated therein (id. at 14).

As for the malicious prosecution claim, defendants contend that the Complaint does not allege a lack of probable cause, with defendants denying that Judge Merino's probable cause decision binds them and undermined by plaintiff's guilty plea (id. at 16).  Further, Judge Merino's decision also does not satisfy the favorable termination element for a malicious prosecution claim (id. at 17-18).  The malicious prosecution claim is against McKimmie only (see Docket No. 1, Compl. at seventh unnumbered page).  Plaintiff alleges that the lack of probable cause generally creates an inference of malice (id. ¶ 48), but defendants argue above rejecting plaintiff's probable cause contention.  Alternatively, plaintiff argues malice can be shown from the video of the incident where one defendant can be heard calling plaintiff an "asshole" and for attacking plaintiff without justification (id. ¶¶ 50, 51, Ex. A).  Defendants counter that plaintiff is attempting to use Cale's "asshole" statement to attribute malice to named defendant McKimmie (Docket No. 13, Defs. Memo. at 18).  McKimmie initiated prosecution against plaintiff, not Cale, thus defendants conclude Cale's words and actions should not be attributed to McKimmie to establish McKimmie's state of mind (id.).  Finally, defendants argue that the Complaint does not allege a post-arraignment seizure to the dismissed OGA and resisting arrest charges alone, that plaintiff was also charged with other offenses (one to which he pled guilty) (id. at 19).

*Plaintiff's Response (Docket No. 19)*

Pointing to the video exhibit to the Complaint (Docket No. 1, Compl., Ex. A), plaintiff argues that it shows that he was stopped, without being told he was under arrest or issuing a traffic ticket, and "maimed and disfigured for doing nothing more than turning into his own driveway, and exercising his right to run when [defendant officers] approached him without a basis to do so" (Docket No. 19, Pl. Memo. at first unnumbered page).  Plaintiff claims he was tasered three times by McKimmie merely for running away (id. at second unnumbered page).  Plaintiff concludes that he alleged a Fourth Amendment violation for unlawful arrest, malicious prosecution, and excessive force (id.).  Plaintiff mentions the races of the parties in objection to this motion (id. at first to second unnumbered pages) although failing to allege them in the Complaint.  Plaintiff contends that Judge Merino's probable cause decision and plaintiff's subsequent guilty plea are not dispositive of whether defendants had probable cause to arrest him (id. at fourth to eighth unnumbered pages).  A traffic offense gave defendants the right to issue a traffic ticket but not to arrest him (id. at fourth unnumbered page), see Dukes v. Troy Hous. Auth., No. 1:08CV479, 2011 U.S. Dist. LEXIS 34483, at *27 (N.D.N.Y. Mar. 31, 2011). Plaintiff contends that this was no ordinary traffic stop, that there were no lights activated (id.), although he did not allege this in the Complaint.  Plaintiff concludes that there are issues of fact whether plaintiff had the right to run from police officers (id.).

Plaintiff argues that Judge Merino's decision does not have collateral effect because, as a probable cause proceeding, it lacks preclusive effect (id. at sixth unnumbered page).  As for his guilty plea to a traffic infraction, plaintiff diminishes its importance and urges that it have little preclusive effect (see id. at seventh unnumbered page).

6

*Defense Reply (Docket No. 20)*

In reply, defendants argue that plaintiff's guilty plea dooms his false arrest claim, with that plea estopping the false arrest claim (Docket No. 20, Defs. Reply at 1-4).  As for his excessive force claim, plaintiff alleged that he was subdued before being hit by taser bolts which is inconsistent with subsequent allegations (id. at 4-5).  Defendants conclude that plaintiff cannot rewrite his claim to now assert an excessive force claim (see id. at 5).

As for malicious prosecution, defendants argue that Judge Merino's decision does not establish a lack of probable cause (id. at 6-7).  Judge Merino's probable cause decision was not a favorable termination required for malicious prosecution (id. at 7), see Lanning v. City of Glens Falls, 908 F.3d 19, 24-25 (2d Cir. 2018).  Defendants point out that a single compelled court appearance does not constitute a seizure and deprivation of Fourth Amendment liberty for this cause of action (id. at 8), Burg v. Gosselin, 591 F.3d 95 (2d Cir. 2010).

## DISCUSSION

I.    Applicable Standards

A.    Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46);

7

Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007). To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5. As recently reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), rev'g Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985). In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

B.      Section 1983

To state a valid claim under § 1983, plaintiff has to allege that defendants acted under color of state law (not in dispute here) and that they deprived plaintiff of a right, privilege or immunity secured by the United States Constitution or laws of the United States, see Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997).  Here, plaintiff alleges violation of his Fourth Amendment right regarding seizure of his person and as applicable to the states under the Fourteenth Amendment (see Docket No. 1, Compl. ¶¶ 5-6).  That Amendment provides that

> "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized,"

U.S. Const. Amend. IV.

1.      Excessive Force

As alleged by plaintiff and citing Fifth Circuit standards (Docket No. 1, Compl. ¶ 34), to claim excessive force plaintiff needs to show an injury which results directly and only from the use of force that was clearly excessive to the need, and the force used was objectively unreasonable, Cass v. City of Abilene, 814 F.3d 721, 731 (5th Cir. 2016) (per curiam) (quoting Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000) (stating Fifth Circuit's standard)) (id.).

Defendants contend that "to state a cognizable excessive-force claim under the Fourth Amendment, a plaintiff must plausibly allege that the arresting officer's use of force was objectively unreasonable under the circumstances" (Docket No. 13, Defs. Memo. at 12), see Kisela v. Hughes, 584 U.S. ____, 138 S.Ct. 1148, 1152 (2018) (per curiam).

9

The Fourth Amendment prohibition against police use of excessive force is "measured by the standard of objective reasonableness," Jennis v. Rood, 310 F. App'x 439, 441 (2d Cir. 2009), citing Graham v. Connor, 490 U.S. 386, 397 (1989). An excessive force claim requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," Graham, supra, 490 U.S. at 396; Jennis, supra, 310 F. App'x at 441. Whether the force used was excessive or unreasonable is fact intensive and depends upon the totality of the circumstances presented, Tennessee v. Garner, 471 U.S. 1, 8-9 (2010) (id.).

Courts in the Second Circuit have upheld the non-lethal use of taser against claims of excessive use of force against non-compliant individuals, Cruz v. City of New Rochelle, No. 13CV7432, 2017 U.S. Dist. LEXIS 63832, at *68-69 (S.D.N.Y. Apr. 3, 2017) (Smith, Mag. J.) (citing cases and granting summary judgment to defendants on claim of excessive force for use of tasers); Estate of Jaquez v. City of N.Y., 104 F. Supp.3d 414, 435 (S.D.N.Y. 2015), particularly for individuals who are resisting arrest or are fleeing, Lee v. City of Utica, No. 6:10CV144, 2013 U.S. Dist. LEXIS 197443, at *10 (N.D.N.Y. Mar. 5, 2013) (citing cases); Arnold v. Buck, No. 3:11CV1343, 2013 U.S. Dist. LEXIS 108629, at *13-16 (D. Conn. Aug. 2, 2013) (citing cases).

2.    Malicious Prosecution

Again, as alleged by plaintiff, to assert a malicious prosecution claim under § 1983 applying New York law he must prove the initiation of a criminal proceeding against him, termination of that proceeding in his favor, the lack of probable cause for commencing the

proceeding, and actual malice as a motivation for defendants, <u>Murphy v. Lynn</u>, 118 F.3d 938, 947 (2d Cir. 1997) (Docket No. 1, Compl. ¶ 45; <u>see also</u> Docket No. 19, Pl. Memo. at eleventh-twelfth unnumbered pages); <u>Dettelis v. Sharbaugh</u>, 919 F.3d 161, 163-64 (2d Cir. 2019) (per curiam) (Docket No. 13, Defs. Memo. at 15).  Malice under New York law only requires proof that defendant commenced the criminal prosecution "due to a wrong or improper motive, something other than a desire to see the ends of justice served," <u>Rounseville v. Zahl</u>, 13 F.3d 625, 630 (2d Cir. 1994) (Docket No. 19, Pl. Memo. at twelfth unnumbered page).  The lack of probable cause gives rise to an inference of malice in commencing criminal proceedings, <u>Martin v. City of Albany</u>, 42 N.Y.2d 13, 17, 396 N.Y.S.2d 612, 615 (1977) (<u>id.</u>).

Federal courts in this Circuit also require for a § 1983 malicious prosecution claim that plaintiff show "'a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment,'" <u>Lanning</u>, <u>supra</u>, 908 F.3d at 24 (quoting <u>Washington v. County of Rockland</u>, 373 F.3d 310, 316 (2d Cir. 2004) (Sotomayor, J.), quoting in turn <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 117 (2d Cir. 1995)) (<u>id.</u>); <u>Rohman v. New York City Transit Auth.</u>, 215 F.3d 208, 215 (2d Cir. 2000) (plaintiff needs to allege sufficient post-arraignment liberty restraint for § 1983 violation).  This is manifested in post-arraignment deprivation of his Fourth Amendment right by numerous court appearances following the arrest, <u>see</u> <u>Burg</u>, <u>supra</u>, 591 F.3d at 98 (<u>id.</u> at 19; Docket No. 19, Pl. Memo. at thirteenth unnumbered page).  The number of appearances that form a Fourth Amendment violation is unclear in this Circuit; <u>Burg</u> held that a single appearance does not state a deprivation, 591 F.3d at 98, while the Second Circuit suggested that five appearances may state

a deprivation of Fourth Amendment rights, see Rohman, supra, 215 F.3d at 216; Burg, supra, 591 F.3d at 98 n.4 (Docket No. 19, Pl. Memo. at thirteenth unnumbered page).

> 3.     False Arrest or Imprisonment

"A section 1983 claim for false arrest is 'substantially the same as a claim for false arrest under New York law,'" Ortiz v. City of N.Y., 773 Fed. App'x 54, 55 (2d Cir. 2019) (quoting Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007)).  As such, false arrest or false imprisonment are the same torts, Ortiz, supra, 773 Fed. App'x at 55 n.2 (Docket No. 13, Defs. Memo. at 11 n.4); Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991).  As alleged in the Complaint (Docket No. 1, Compl. ¶ 54) and accepted by defendants (Docket No. 13, Defs. Memo. at 11) as the applicable standard, plaintiff alleges a claim for false arrest or imprisonment if the defendant intended to confine the plaintiff; the plaintiff was conscious of the confinement; plaintiff did not consent to the confinement; and the confinement was not otherwise privileged, Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994).  Where there was probable cause for the arrest, the confinement becomes privileged and that probable cause finding is a complete defense to a false arrest action, id.; Zanghi v. Incorp. Village of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985).

> C.     Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  As required by the Saucier Court, this Court first considered the constitutional question, then considered the qualified immunity question, id.  But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), overruled Saucier in requiring courts to first determine

whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity.  Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

II.    Application

Even accepting the allegations pled as true, the Complaint has incorporated the proceeding in Niagara Falls City Court that led to the dismissal of some charges and plaintiff's guilty plea to others, see Fed. R. Civ. P. 10(c) (exhibits attached to pleadings are part of the pleadings for all purposes).

A.    Right to Flee under the Fourth Amendment

Plaintiff argues that there is an issue of fact whether he has a right to run from the police (Docket No. 19, Pl. Memo. at fifth unnumbered page).  As a motion to dismiss, however, plaintiff's factual allegations are deemed true.  The existence of a right is a legal question not a factual matter.

As defendants argue, plaintiff's opposing memorandum to this motion to dismiss cannot amend the Complaint if that pleading fails to allege contentions now raised in opposition (see also Docket No. 20, Defs. Reply Memo. at 8).  Alternatively, assuming plaintiff alleges a right to flee, he cites New York State constitutional law recognizing that right (Docket No 19, Pl. Memo. at fifth unnumbered page), People v. Howard, 50 N.Y.2d 583, 586, 430 N.Y.S. 578, 581 (1980), but no cases interpreting the United States Constitution or its Fourth Amendment recognizing that right, see also Dancy v. McGinley, 843 F.3d 93, 112 (2d Cir. 2016) (refusal to respond to police questioning protected under New York State Constitution).  While it may be a state constitutional right to flee that defendants may have respected (cf. Docket No. 1, Ex. D, Tr. at 30 (McKimmie), 59 (Cale)), in a federal constitutional case flight may be considered as part of the reasonableness of defendant officers' response, see Parker v. Bulik, No. 11CV5412, 2017 U.S. Dist. LEXIS 124301, at *35 (E.D.N.Y. Aug. 5, 2017).  As noted by one district court, "we are not concerned with [plaintiff's] silence.  We are concerned with his flight and concealment. There is no constitutional right to flee justice."  United States ex rel. Powell v. Penn., 294 F. Supp. 849, 852 (E.D. Pa. 1968); see also Wisconsin v. Chapman, No 08-cv-112-bbc, 2008 U.S. Dist. LEXIS 17160, at *4 (W.D. Wis. Mar. 3, 2008).  There is thus no established federal constitutional right or privilege allowing a person to flee from law enforcement.

Plaintiff argues that his flight was part of his Fifth Amendment right refusing to speak to the officers (see Docket No. 19, Pl. Memo. at ninth unnumbered page).  The Fifth Amendment guarantees an individual's right to remain silent but that right does not include fleeing from or avoiding the authorities, see U.S. ex rel. Powell, supra, 294 F. Supp. at 852.  Further, plaintiff

14

does not allege a Fifth Amendment violation in this Complaint; all three Causes of Action allege violations of the <u>Fourth</u> Amendment.

Without a federal constitutional right to flee when a person is approached by a law enforcement officer under the Fourth Amendment, this Court next considers plaintiff's remaining allegations.

### B.    Excessive Force

Plaintiff alleges both defendants applied excessive amounts of force against him during this arrest (<u>see</u> Docket No. 1, Compl.).  Aside from plaintiff's contention that force should not have been applied upon him at all, plaintiff has not alleged that some lesser amount of force that should have been applied to detain him.  Implicit in the Complaint, plaintiff asserts that once he was subdued by Cale, McKimmie had no reason to fire his taser two times at plaintiff.

Plaintiff appears to allege alternative theories of what occurred, that McKimmie tasered him twice after he was already subdued (Docket No. 19, Pl. Memo. at ninth to tenth unnumbered pages; Docket No. 20, Defs. Reply Memo. at 4-5), and that such force was excessive.  He argues that it is premature to argue the facts at a motion to dismiss stage (Docket No. 19, Pl. Memo. at tenth unnumbered page).  Plaintiff alleges in the Complaint that McKimmie and Cale chased him and McKimmie fired his taser at him (Docket No. Compl. ¶¶ 1, 23).  Cale then pinned plaintiff down to the ground (<u>id.</u> ¶¶ 1, 24).  McKimmie then tasered plaintiff two times after plaintiff was pinned down (<u>id.</u> ¶¶ 1, 25).

Defendants now argue that plaintiff alleges an alternative theory that he was tasered twice but plaintiff never alleged this in the Complaint (Docket No. 20, Defs. Reply Memo. at 4-5).

Paragraph 1 of the Complaint (as cited by defendants, Docket No. 20, Defs. Reply Memo. at 5), however, <u>does</u> allege plaintiff being tasered two times after he was already subdued.

 As noted above, the Complaint has exhibits incorporated with it; plaintiff attached testimony from the probable cause hearing and with it the sworn testimony of defendants and the hearing findings of Judge Merino (Docket No.1, Exs. D, B).  There, defendants testified that plaintiff started to run when approached about the traffic stop, plaintiff then stumbled, was subdued by Cale, and McKimmie shot plaintiff with a taser (<u>see generally</u> Docket No. 1, Ex. D).  By Federal Rule of Civil Procedure 10(c), plaintiff has the ability to allege alternative theories based on the allegations in the pleading and the exhibits.  The version defendants claim to "fashion" for plaintiff (Docket No. 20, Defs. Reply Memo. at 5) of Cale reaching plaintiff first, plaintiff and Cale struggling, and McKimmie firing his taser at plaintiff is what is alleged in the Complaint and its exhibits.  It is not a "re-writing" of the Complaint to reach this construction (<u>but cf.</u> <u>id.</u>).

 A motion to dismiss addresses the pleadings, whether plaintiff alleges a claim (for this Cause of Action, excessive use of force).  Given the fact intensive nature of an excessive force claim and that plaintiff alleges use of force by defendants (restraining him on the ground, shooting him with a taser), plaintiff has **stated a claim**.  It is premature to determine whether defendants use of force was objectively unreasonable under the circumstances.  What is open for determination is whether that amount of force applied was objectively reasonable under the circumstances, plaintiff involved in a traffic stop that escalated to flight and resisting restraint.  From discovery and a possible dispositive motion or trial, it can be determined whether that use

16

of force was excessive under the circumstances.  Thus, defendants' motion to dismiss this excessive use of force Cause of Action (Docket No. 13) should be **denied**.

C.     False Imprisonment

Plaintiff alleges that defendants intended to confine him, that he was conscious of the confinement, and that he did not consent to the confinement.  The issue is whether there was probable cause for the arrest to make the arrest privileged, with a subsidiary issue of whether probable cause had to be for the offenses later dismissed or for any offense charged.  Plaintiff was charged with multiple Penal Law and Vehicle and Traffic Law counts, some of which were dismissed for lack of probable cause.

Defendants argue that plaintiff fails to establish that his arrest was not otherwise privileged.   That is, there was no basis to arrest plaintiff on any charge (Docket No. 13, Defs. Memo. at 11-12).  The privilege arises from probable cause to detain plaintiff for at least the traffic infractions.  Niagara Falls City Court Judge Merino found probable cause for some of the charges against plaintiff (the traffic infractions), leading to plaintiff's subsequent guilty plea.  If probable cause exists for any crime, then that false imprisonment element is not met, see Marcavage v. City of N.Y., 689 F.3d 98, 109-10 (2d Cir. 2012) (id. at 11-12).  "A Fourth Amendment claim turns on whether probable cause existed to arrest for any crime, not whether probable cause to arrest Plaintiffs for any single offense," id. at 110; see Devenpeck v. Alford, 543 U.S. 146, 153-56 (2004).  The court in Marcavage held that those defendants would prevail in their motion for summary judgment "if there was probable cause to arrest Plaintiffs for any single offense," Marcavage, supra, 689 F.3d at 110; see Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

A traffic infraction can justify detaining a person, <u>Whren v. United States</u>, 517 U.S. 806, 809-10 (1996); <u>United States v. Scopo</u>, 19 F.3d 777, 781-82 (2d Cir. 1994) (officer may arrest a motorist for violation that occurs in officer's presence) (Docket No. 13, Defs. Memo. at 7). Here, McKimmie observed plaintiff almost run him over to justify detaining plaintiff to cite him for the traffic violations.  <u>Dukes</u>, cited by plaintiff (Docket No. 19, Pl. Memo. at fourth unnumbered page) is distinguishable, where the district court held that the traffic infraction of failure to have illuminated headlights warranted only a ticket and not an arrest, 2011 U.S. Dist. LEXIS 34483, at *27 & n.11.  Defendants here were attempting to detain plaintiff on his traffic infractions when he fled and resisted.

Defendants' motion (Docket No. 13) to dismiss this false imprisonment/false arrest claim should be **granted**.

D.    Malicious Prosecution

This Court first notes that plaintiff only alleges a malicious prosecution claim against McKimmie (Docket No. 1, Compl. ¶¶ 46-51), but he alleges McKimmie's malice from the collective actions and attitude of both defendants (see <u>id.</u> ¶¶ 50-51, Ex. A).  Whatever malice Cale might have had, absent proof the McKimmie pursued these charges to vindicate his partner, cannot be attributed to McKimmie.  Thus, plaintiff failed to allege McKimmie's malice for that element of a malicious prosecution claim.

Plaintiff alleges initiation of criminal prosecution.  He alleges that McKimmie maliciously prosecuted him in charging him for Penal Law resisting arrest and OGA counts that were dismissed by Judge Merino.  Plaintiff alleged that McKimmie initiated a criminal

18

proceeding against plaintiff, attaching to the Complaint the criminal Complaint alleging these Penal Law counts (Docket No. 1, Ex. E).

Next elements are the related points that the proceedings terminated in plaintiff's favor and the lack of probable cause in commencing the prosecution. If proceedings mean the entire case, plaintiff's guilty plea to the traffic violation is not a termination in his favor. On the other hand, if "proceedings" merely refers to the resisting arrest and OGA counts, their dismissal was in plaintiff's favor. Judge Merino's decision on plaintiff's probable cause hearing showed the allegation of the lack of probable cause for these two counts. Defendants argue that this decision is not binding on McKimmie to allege a lack of probable cause (see Docket No. 13, Defs. Memo. at 16). The mixed result of some counts being dismissed on lack of probable cause and others allowed to proceed (with plaintiff later pleading guilty to one) cast doubt upon whether there was a favorable termination for plaintiff (especially if the termination is of the entire prosecution). While the parties argue for the false imprisonment claim that any surviving count denies that claim, they do not discuss whether termination of the proceeding is the entire criminal case or the offending counts. Whether to dismiss this Cause of Action, however, does not hinge on deciding this point.

The remaining (and this Court believes dispositive) element for plaintiff's § 1983 claim is plaintiff's Fourth Amendment violation of post-arraignment proceedings that deprived him of his liberty. In opposition to this motion, plaintiff assert that he appeared "upwards of four times, including his in custody [sic] arraignment" (Docket No. 19, Pl. Memo. at thirteenth unnumbered page), but plaintiff does not cite to the Complaint or other places for the notation of his appearances in Niagara Falls City Court. For post-arraignment deprivation, however, plaintiff's

arraignment on February 24, 2017 (see Docket No. 1, Compl., Ex. E) should not count.  By

attaching documents from the Niagara Falls City Court proceedings to the Complaint (Docket

No. 1, Exs. D, B), plaintiff alleged at least two proceedings in which he had to attend before the

resisting arrest and OGA counts were dismissed.  Plaintiff, in fact, was not present for the

September 26, 2017, hearing in which Judge Merino dismissed those counts (id., Ex. B, at 3).

The Complaint itself does not allege the number of times plaintiff was compelled to appear in

court.  Thus, this Court finds that plaintiff has pled only one court appearance following his

arrest (counting the July 6, 2017, probable cause hearing) (id., Ex. D, at 1).  Under Burg, supra,

591 F.3d at 98, a single post-arraignment appearance does not constitute a deprivation of liberty

interest in violation of the Fourth Amendment to state a § 1983 malicious prosecution claim.

Plaintiff also fails to allege his release condition when he was arraigned; those conditions, even

release on one's own recognizance, limits a defendant's liberty to implicate the Fourth

Amendment, cf. Rohman, supra, 215 F.3d at 216.

Therefore, defendants' motion to dismiss the § 1983 malicious prosecution Cause of

Action (Docket No. 13) should be **granted**.

E.      Qualified Immunity

In distinguishing Judge Merino's probable cause findings, defendants argue that qualified

immunity "injects extra latitude into the probable-cause standard" (Docket No. 13, Defs. Memo.

at 10).  Defendants also argue that McKimmie had "arguable probable cause to believe that

Blackmon was guilty to OGA and resisting arrest" entitling him to qualified immunity (id. at 16).

Defendants here are not making a full-blown qualified immunity argument.  They have not

asserted qualified immunity against plaintiff's excessive use of force claim (the only claim that

would remain if this Report is adopted).  Had defendants raised qualified immunity against that claim, there are factual issues that make granting immunity inappropriate at this time, see Dukes, supra, 2011 U.S. Dist. LEXIS 34483, at *29 (declining to grant qualified immunity).

Given the recommended disposition for dismissal on the substance of the malicious prosecution and false arrest/false imprisonment claims (each dependent upon the issue of probable cause) and the lack of a complete qualified immunity argument from the defense, this Court need not address defendants' suggestion that their actions were protected by qualified immunity (cf. id.).

F.    In Sum

Plaintiff's First Cause of Action for excessive use of force **states a claim** and should **not be dismissed**; his Second Cause of Action for malicious prosecution should be **dismissed**; and his Third Cause of Action for false imprisonment or false arrest should be **dismissed**.  Thus, defendants' motion to dismiss (Docket No. 13) should be **granted in part, denied in part as stated above**.

If this Report and Recommendation is adopted in full (or the recommendation denying dismissal of the excessive force claim is adopted), plaintiff still would allege a claim for excessive use of force; this Court then would have to set a Scheduling Order and monitor other pretrial proceedings for that surviving claim.  Defendants have not sought qualified immunity as to this excessive use of force claim.  Following disposition of any objections to this Report and ultimate decision of defendants' motion, this Court will set for a schedule for the parties to conduct Rule 16 and 26 discussions for proposing Scheduling Order deadlines and scheduling (if necessary) a Scheduling Conference.

**CONCLUSION**

Based upon the above, it is recommended that defendants' motion to dismiss (Docket

No. 13) be **granted in part, denied in part**, with plaintiff's First Cause of Action for excessive

use of force surviving.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the

Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk**

**of this Court within fourteen (14) days after receipt of a copy of this Report &**

**Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and**

**W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME**

**WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S**

**ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v.

Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak

v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case

law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale

Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
November 7, 2019